UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN VASQUEZ PACHECO, | |
| Petitioner, | No. 1:26-CV-02052 |
| v. | Judge Edmond E. Chang |
| BRANDON CROWLEY, Jail Commander of the Clay County Detention Center,[1] | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Kevin Vasquez Pacheco, a citizen and native of Peru, is being detained without an opportunity to seek release via a bond hearing in front of an immigration judge. R. 1, Pet. ¶¶ 1–6.[2] He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, asking the Court to order the government either to give him a bond hearing or to release him immediately.[3] *Id.* ¶ 6. For the following reasons, the Court grants the petition in general, though the relief is the issuance of a conditional writ requiring a bond hearing by a date certain rather than immediate release.

---

[1]Because "the default rule is that the proper respondent is the warden of the facility where the [petitioner] is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), the Court substitutes Brandon Crowley as the proper respondent under Civil Rule 25(d). *See* R. 9, Gov't's Status Report at 2.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[3]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241, which applies generally to habeas writs. As explained below, no immigration-specific statute removes the petition from the jurisdictional grant.

## I. Background

Vasquez Pacheco is a citizen and native of Peru who entered the country in May 2022. Pet. ¶ 2. He was arrested during a scheduled immigration check-in on February 24, 2026, and on that day was issued a notice to appear for removal proceedings. Gov't's Status Report at 1–2. Vasquez Pacheco was initially held at the Broadview Detention Center in Broadview, Illinois, before being moved to the Clay County Detention Center in Brazil, Indiana, where he is currently detained. *Id.* He currently is scheduled to appear before an immigration judge on March 10, 2026, *id.* at 2, and he remains detained without the opportunity for a bond hearing, Pet. ¶ 23.

Vasquez Pacheco believes that his mandatory detention is unlawful, so he filed this petition for a writ of habeas corpus when he was detained at Broadview. Gov't's Status Report at 1; Pet. ¶¶ 4–7. He contends that the government's decision to detain him under a particular immigration-inspection statute, 8 U.S.C. § 1225(b)(2)(A), amounts to a legal error in violation of the Immigration and Nationality Act as well as the Fifth Amendment's Due Process Clause. Pet. ¶¶ 54–66. Vasquez Pacheco also argues that he instead should be given a bond hearing consistent with 8 U.S.C. § 1226(a)(2). *Id.* ¶¶ 6–7.

## II. Legal Standard

A petition for writ of habeas corpus is the proper vehicle for petitioners who contend that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas petitioners bear the burden of

2

showing that their detention is unlawful. *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *2 (N.D. Ill. Oct. 16, 2025) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

### III. Analysis

This case—and many others like it—is a result of last year's decision by the Board of Immigration Appeals, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Like here, *Yajure Hurtado* considered whether the government had correctly invoked § 1225(b)(2)(A) to detain an alien, or instead if the alien should be considered detained under § 1226—which would at least give the alien a chance at a bail hearing. *Id.* at 218–20. The government relies on the same reasoning set forth in *Yajure Hurtado* even while conceding that another court has vacated that decision. R. 8, Resp. at 3; *Maldonado Bautista v. Santacruz*, — F. Supp. 3d —, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), *appeal docketed*, No. 26-1044 (9th Cir. Feb. 23, 2026). Last week, the Ninth Circuit administratively stayed the California district court's February 18 order as well as any application beyond the Central District of California of the district court's earlier December 18 order. *Maldonado Bautista v. U.S. Dep't of Homeland Sec.*, No. 26-1044 (9th Cir. Mar. 6, 2026). But in any event, "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024). And courts have an "obligation to independently interpret the statute." *Id.* at 400.

The overwhelming majority of decisions in this district, and across the country, have concluded that petitioners like Vasquez Pacheco are entitled to a bond hearing. *See Guartazaca Sumba*, 2025 WL 3126512, at *2 (N.D. Ill. Nov. 9, 2025) (collecting

3

cases); *Barco Mercardo v. Francis*, — F. Supp. 3d —, 2025 WL 3295903, at *4 & nn.22–23 (S.D.N.Y. Nov. 26, 2025) (tallying hundreds of cases granting relief and dozens denying relief).

The Seventh Circuit also has addressed this issue in resolving a stay motion, concluding that § 1226, not § 1225(b)(2)(A), governs the detention of aliens who entered the country unlawfully. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–62 (7th Cir. 2025). The government contends that *Castañon-Nava*'s holding is mere dicta and also is not binding because it was made on only a preliminary record. Resp. at 1–2; *see also Cruz Rodriguez v. Olson*, — F. Supp. 3d —, 2026 WL 63613, at *5 n.6 (N.D. Ill. Jan. 8, 2026). But this Court already has explained why *Castañon-Nava*, a reasoned decision on an issue purely of law, may be binding and is at least substantially persuasive. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026). And as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question.

The government continues to rely on the minority of decisions around the country that have denied habeas relief. Resp. at 3–4. The Court previously has explained its respectful disagreement with two of those decisions. *See Ruiz Melesio v. Crowley*, No. 1:25-cv-13291, at 3–4 (N.D. Ill. Nov. 17, 2025); *Morales Perez*, 2026 WL 44777, at *2–5. Another, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), presents some additional gloss on those arguments. The Court respectfully disagrees with the Fifth Circuit's reasoning too.

4

The Court begins with the government's threshold contention: that various statutory provisions, 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g), strip federal courts of jurisdiction to consider Vasquez Pacheco's petition. Resp. at 3. As the Court has previously explained, *see Guartazaca Sumba*, 2025 WL 3126512, at *2–3, none of the cited jurisdiction-stripping provisions apply here. Vasquez Pacheco's challenge to "the statutory framework that permits his detention without bail" is not the kind of discretionary decision for which § 1252(a)(2)(B)(ii) bars judicial review. *Demore v. Kim*, 538 U.S. 510, 517 (2003). And the government's decision to impose mandatory detention is too attenuated from "any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), to be barred by that provision either. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion) (holding that government's "expansive interpretation of § 1252(b)(9) would lead to staggering results"); *see also id.* at 355 (Breyer, J., dissenting). Nor does 8 U.S.C. § 1252(g) bar judicial review: the provision bars only "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphases in original) (cleaned up).[4] Vasquez Pacheco's challenge to his detention is not any of those. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). Notably, although the government cites a small minority of decisions denying relief on the merits

---

[4]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

of the mandatory-detention issue, the government cites *none* supporting its view on jurisdiction. Indeed, the cases cited by the government that considered jurisdictional obstacles concluded that federal jurisdiction was secure. *See, e.g.*, *Cruz Rodriguez*, — F. Supp. 3d —, 2026 WL 63613, at *2–4.[5]

Reaching the merits, the Court concludes that Vasquez Pacheco is entitled to a bond hearing because his detention arises under 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, Vasquez Pacheco must be an "applicant for admission" who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." *See also* R. 8-1, Gov't's *H.G.V.U.* Resp. Br. at 14–21. Although Vasquez Pacheco is an "applicant for admission," he is not "seeking admission" based on that term's plain meaning: he entered the country nearly four years ago and thus does not remain in a state of seeking or requesting admission *into* the country. That is why the Supreme Court has noted that § 1225(b) "applies primarily to aliens seeking *entry* into the United States," whereas § 1226 applies to "aliens *already in the country*." *Jennings*, 583 U.S. at 289, 297 (emphases added).

*Buenrostro-Mendez* discusses *Jennings* head-on but dismisses its relevance. In the Fifth Circuit's view, the relevant portions of *Jennings* that might support Vasquez Pacheco's position are "general description[s]" and "dicta" that cannot be parsed so closely. *Buenrostro-Mendez*, 166 F.4th at 505–06. But *Jennings* does not stand alone:

---

[5]The government again does not specify whether it adopts all of the arguments made in its earlier briefing, so for the sake of completeness, the Court refers to its earlier discussion of why failure to exhaust, if raised as an affirmative defense by the government, would fail. *See Guartazaca Sumba*, 2025 WL 3126512, at *3 n.8.

across a series of decisions, the Supreme Court has made the same observation that it made in *Jennings*. Affording bond hearings—as Vasquez Pacheco requests—is the process that "governs … certain noncitizens present in the country who were inadmissible at the time of entry," *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022); is "the ordinary course" for "an alien [who] is living in the United States without authorization," *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); and "applies to most" aliens subject to removal, *Nielsen v. Preap*, 586 U.S. 392, 397 (2019); *see also Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("[M]ost aliens may be released on bond or paroled."). It is true that, like the observations in *Jennings*, these statements do not directly interpret all the key terms in dispute here—the issue was not presented in those cases—but they reflect the Supreme Court's repeated understanding of the statutes at issue. And in any event, observations like this from the Supreme Court at least carry significant persuasive weight. *See Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 120 n.8 (7th Cir. 1989); *United States v. Schnur*, 684 F. Supp. 3d 522, 531 n.6 (S.D. Miss. 2023) (collecting other circuit cases).

In response, the government endorses two, contradictory positions, so the Court addresses each. First, the government argues that the terms are synonymous. *See, e.g.*, Gov't's *H.G.V.U.* Resp. Br. at 19; *Buenrostro-Mendez*, 166 F.4th at 502–03. But this reading of the statutes violates the bedrock "interpretive principle that every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (cleaned up). Although the rule disfavoring surplusage is not absolute, *see Stanley v. City of Sanford*, 606 U.S. 46, 56

7

(2025), the rule "is strongest when an interpretation would render superfluous another part of the *same* statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (emphasis added). Here, the words "an applicant for admission" and "an alien seeking admission" are a mere seven words apart in § 1225(b)(2)(A), so it belies reason that the words somehow mean the *same* thing when they are (obviously) *different* terms. And as the Court has previously concluded, "seeking admission" "implies some ongoing, *affirmative* action by a person … [to] seek[] or request[] admission *into* the country." *Guartazaca Sumba*, 2025 WL 3126512, at *4 (emphases in original). That does not describe Vasquez Pacheco.

Second, the government adopts another argument from *Buenrostro-Mendez*: that the two terms are *not* synonymous but rather that "applicants for admission" are a "subset" of all aliens "seeking admission." 166 F.4th at 503–04. This position analogizes to § 1225(a)(3), which requires inspection for "[a]ll aliens … who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States."[6] But the plain meaning of the word "otherwise" does not always define or encapsulate preceding terms. *See Singh v. English*, 2025 WL 3713715, at *3 (N.D. Ind. Dec. 23, 2025) ("[A]s an interpretive doctrine, *ejusdem generis* applies only to specific enumerations—a list of two or more specific examples—that then end in a generic and often broad or linear catchall term."); *see also Ali v. Fed. Bureau of*

---

[6]*Buenrostro-Mendez* also cites to § 1225(a)(5), another provision that refers to "applicant[s] for admission" and their "purposes and intentions … in seeking admission." 166 F.4th at 503.

*Prisons*, 552 U.S. 214, 225 (2008) ("The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."). And this reading requires concluding that Congress defined the narrower term ("applicant for admission") while leaving undefined (for some unknown reason) what would apparently be the crucial, general term ("alien seeking admission") that sweeps more aliens into the mandatory-detention provision. *See Castañon-Nava*, 161 F.4th at 1061 ("But it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' ….").

At bottom, if Congress intended for the two terms to have entirely or substantially identical meanings, then "it could have said so in words far simpler than those that it wrote," *cf. Biden v. Texas*, 597 U.S. 785, 798 (2022). The only interpretation that avoids any surplusage is one that divides in part aliens who are "applicants for admission" from those who are "seeking admission." *Buenrostro-Mendez* concludes that surplusage is unavoidable. *See* 166 F.4th at 503. Although, in many cases, both terms will apply to an alien, there indeed are other situations in which one term or the other may not apply. *See Singh*, 2025 WL 3713715, at *4 (offering example of a human-trafficking victim who was involuntarily brought into the United States as an alien who is not "seeking" admission). By treating Vasquez Pacheco, who entered the country years ago, as an "applicant for admission" but not as someone who still is actively "seeking admission" into the country, the Court thus gives meaning to both

9

terms. *See Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity.").

Another surplusage issue remains. The government's position would render superfluous 8 U.S.C. § 1226(c)(1)(E), a provision amended last year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (codified as amended in scattered sections of 8 U.S.C.). Section 1226(c)(1)(E) mandates custody for aliens who are (i) inadmissible because they unlawfully entered the country, misrepresented a material fact to enter the country, or lacked a valid, unexpired entry document; *and* (ii) were charged with or committed certain enumerated crimes. But the entire provision would be surplusage if all aliens who were applicants for admission are subject to mandatory detention under § 1225(b)(2)(A). And as specifically relevant to Vasquez Pacheco, there would be no need to enact legislation requiring detention for unlawful entrants (like Vasquez Pacheco) only upon the additional condition that they commit certain crimes if those same unlawful entrants were subject to mandatory detention under § 1225(b)(2)(A) all along.

*Buenrostro-Mendez* acknowledges the current surplusage but reasons that, at the time the Laken Riley Act was enacted, there supposedly was none. Rather, the Fifth Circuit posits, the Act had "substantial effect" at the time because the government "was still declining to exercise its full enforcement authority." *Buenrostro-Mendez*, 166 F.4th at 504–05. But this interpretation acknowledges that the longstanding (decades long) agency practice was *not* to subject many aliens to mandatory detention. *Id.* at 506. And it assumes that the government had more expansive enforcement

10

authority in the first place, a premise that is at the heart of this dispute and thus is not a given.[7] Plus, the posited explanation for the surplusage assumes that Congress, rather than direct the government to rely on the supposedly already-existing mandatory-detention authority, went to the trouble of enacting an entirely different statute for just a subset of aliens.

In any event, surplusage issues aside, two more interpretive principles counsel rejection of the government's expansive-authority premise. First, "congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*, 476 U.S. 426, 437 (1986) (cleaned up); *Haig v. Agee*, 453 U.S. 280, 297–98 (1981) (concluding that legislation, enacted 70 years after the original statute,

---

[7] Aside from the principal statutory-interpretation arguments, the Fifth Circuit also points to commentary from the Executive Branch contemporaneously published with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and the subsequent amendments to corresponding regulations. *Buenrostro-Mendez*, 166 F.4th at 506–07. But the key remark—"Despite being applicants for admission, aliens who are present without having been admitted or paroled … will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (codified at 8 C.F.R. pts. 1–329))—does not undermine Vasquez Pacheco's position. He argues that he is "eligible for bond" "[d]espite being [an] applicant[] for admission" precisely because he does not meet another statutory precondition that he be "seeking admission." The Executive's commentary is silent on whether "seeking admission" carries independent weight, so it does not support the sweeping inference that *Buenrostro-Mendez* posits about a clearly recognized expansive enforcement authority.

*Buenrostro-Mendez* also relies on a regulation that mandates detention for certain aliens who were "not inspected and admitted or paroled into the United States but who … ha[ve] been continuously physically present … for the 2-year period immediately prior to the date of determination of inadmissibility." 8 C.F.R. § 235.3(b)(1)(ii). But the provision applies only to aliens who are inadmissible specifically because they misrepresented material facts or lack valid documentation, 8 U.S.C. § 1182(a)(6)(C), (a)(7), not to aliens who merely were present in the country without being admitted or paroled, *id.* § 1182(a)(6)(A).

"adopted the longstanding administrative construction"). "To the extent that [the government] has not been complying with the law for the past 30 years, Congress has been extremely silent about its disapproval." *Luis Carbajal v. Wimmer*, 2026 WL 353510, at *7 (D. Utah Feb. 9, 2026). Second, "just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred." *Fed. Trade Comm'n v. Bunte Bros.*, 312 U.S. 349, 352 (1941). These principles might not overcome clear text, but the statutes here either are clear in the other direction or are sufficiently unclear that the interpretive tools are useful.

Because resolution of Vasquez Pacheco's statutory argument affords him the bond hearing that he seeks, the Court need not discuss the merits of his constitutional claim premised on due process. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (cleaned up)).

The Court adds one last note. The parties at times suggest that Vasquez Pacheco was paroled into the country and at others state that he entered without inspection. *Compare* Pet. ¶ 18, *and* Gov't's Status Report at 1, *with* Resp. at 2. As a factual matter, it is unclear what is right. And whether that difference in status is legally significant (and whether Vasquez Pacheco's termination of parole in July 2022 creates a further difference, Pet. ¶ 18) is not something the Court resolves. The government represents that "the present case is not distinguishable" from the mine run

12

of cases challenging mandatory detention. Resp. at 2. Given the government's awareness of the difference and track record raising its significance, *see, e.g.*, Gov't's Br. at 1–3, *Montana Vargas v. Crowley*, 1:26-cv-01204 (N.D. Ill. Feb. 17, 2026); Gov't's Br. at 1–3, *Mairambekov v. Olson*, 1:26-cv-01573 (N.D. Ill. Feb. 20, 2026), the Court holds the government to its silence on the issue in this case. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (explaining the importance of the party-presentation principle).

## IV. Conclusion

The Court grants Vasquez Pacheco's petition, R. 1. Because the Court holds that Vasquez Pacheco's detention under 8 U.S.C. § 1225(b)(2)(A) violates the Immigration and Nationality Act, Vasquez Pacheco is entitled to a bond hearing under 8 U.S.C. § 1226(a). *See* 8 C.F.R. §§ 1003.19, 1236.1(c)(8), (d). The Court thus issues a conditional writ of habeas corpus, directing the Respondent, on or before March 17, 2026, either to afford Vasquez Pacheco a bond hearing that complies with federal laws and regulations or to release him under reasonable conditions of supervision. *See United States ex rel. Owens v. Duncan*, 2015 WL 5950124, at *2 (N.D. Ill. Oct. 13, 2015) (explaining conditional writs of habeas corpus).

The Court directs the parties to file a status report on or before March 20, 2026, that addresses Vasquez Pacheco's release status, whether he received a bond hearing, and the result of that bond hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 9, 2026